**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

STATION ENTERPRISES, INC.
d/b/a TREE TOWN TOYS              CIVIL ACTION NO. 07-CV-14294
AND BRAIN STATION,
      Plaintiff,                    DISTRICT JUDGE GEORGE CARAM STEEH

 VS.                               MAGISTRATE JUDGE MONA K. MAJZOUB

GANZ, INC., et al.

      Defendant.

_____/

**OPINION AND ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO EXCLUDE CERTAIN TESTIMONY OF HANS MASING AND PATRICIA MASING (DOCKET NO. 111) AND GRANTING PLAINTIFF'S MOTION TO STRIKE CERTAIN OF DEFENDANTS' WITNESSES AND EXHIBITS (DOCKET NO. 113)**

These matters come before the Court on two motions. The first is Defendants' Motion To Exclude Certain Testimony Of Hans Masing and Patricia Masing filed on July 8, 2009. (Docket no. 111, 112, filed under seal). Plaintiff filed a Response In Opposition To "Motion Of Defendants, Ganz, Inc. And Ganz U.S.A., LLC To Exclude Certain Testimony Of Hans Masing And Patricia Masing on July 27, 2009. (Docket no. 114, filed under seal). Defendants filed a Reply on August 5, 2009. (Docket no. 117). The second motion is Plaintiff's Motion To Strike Certain Of Defendants' Witnesses And Exhibits filed on July 24, 2009. (Docket no. 113). Defendants filed a Response In Opposition on August 7, 2009. (Docket no. 118, 119, Ex. A. filed under seal). Plaintiff filed a Reply on August 17, 2009. (Docket no. 120). The parties filed a Joint Statement Of Resolved And Unresolved Issues related to both Motions on September 1, 2009. (Docket no. 121). All pretrial proceedings were referred to the undersigned for decision pursuant to 28 U.S.C. §

636(b)(1)(A). (Docket no. 14). The parties' counsel appeared for hearing on these matters on September 9, 2009[1]. These matters are now ready for ruling[2].

## I. Defendants' Motion To Exclude Certain Testimony Of Hans Masing And Patricia Masing (Docket No. 111)

The Masings are Plaintiff's principals. Defendants seek to exclude the Masings' "economic testimony and damage calculations," arguing that this testimony exceeds the scope of testimony allowed under Federal Rule of Evidence 701. Plaintiff argues that it does not seek to qualify the Masings as expert witnesses under Fed. R. Evid. 702 and the Masings will present testimony under Fed. R . Evid. 701. Defendants' arguments regarding the Masings' testimony focus on their deposition testimony regarding the market value of their products and the use of a market value multiplier to calculate market price and lost profits, and the Masings' basis for testifying as to other Webkinz sellers' sales prices as seen on the Internet.

Federal Rule of Evidence 701 allows opinion testimony by a lay witness as follows:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. FED. R. EVID. 701.

Rule 702, Fed. R. Evid., provides for testimony by experts as to scientific, technical or other specialized knowledge. *See* FED. R. EVID. 702. It is possible for the same witness to provide both

---

[1] At the hearing, counsel for the parties stated that they had agreed that they did not need to proceed under seal.

[2] The Court has reviewed the Order Granting In Part And Denying In Part Motion For Summary Judgment (#71) entered on September 10, 2009 and concludes that it does not affect the relevant issues and timelines at issue in these motions. (Docket no. 122).

lay and expert testimony, however, "any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules." FED. R. EVID. 701 advisory committee notes to the 2000 amendments.

"[M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." FED. R. EVID. 701 advisory committee notes to the 2000 amendments citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). "Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." FED. R. EVID. 701 advisory committee notes to the 2000 amendments.

The Masings are owners who are active in running their business day to day. For a period of the time at issue in this action (approximately January through May 2007), Webkinz were allegedly in high demand and being sold on the internet in a range of prices exceeding that at which Plaintiff had regularly been selling the Webkinz. At a point in time in May 2007 the Masings allege that they sold a collection of their Webkinz products, which they referred to as the "Ark," on Amazon for prices exceeding their usual or average prices. (Hans Masing Dep., 9/30/08, pgs. 106-08, 117-18, 122). He also testified that the estimated market price per unit was "based upon the amount we were actually able to sell Webkinz for" when they began selling them at a "market price" on Amazon, rather than selling them for a "manufacturer's suggested retail price." (Hans Masing

Dep. 9/30/08 at 104-106). These sales are in part the basis for their calculation and testimony about damages.

Another basis for their calculations and testimony appears to be the sales prices by other sellers of Webkinz on the Internet. Hans Masing testified that one of his responsibilities is to track day-to-day sales from the warehouse and online sales and inform "Trishia" about purchases and occasionally make spot purchases to "bring product in." (Hans Masing Dep., 9/30/08, pg. 114 at 15-25, pg. 115). Mr. Masing testified that he watched and tracked online sales prices and was tracking Webkinz sales prices "through February and March and into April and May of 2007, which is based upon my testimony earlier that we saw some Webkinz models selling as high as $1200 on Amazon." (Hans Masing Dep., 9/30/08 at 115, *see also* Patricia Masing Dep., 10/01/08, pg. 78). Ms. Masing testified that the multipliers she used to make the damages calculations were based on their own actual sales data, the cost of the "ark" items sold in May 2007, and their own observations from sales earlier in the year.

To the extent that Hans Masing testified that he estimated the price at which Webkinz were selling two months prior to the time he sold the higher priced (ark) Webkinz online, it is premature to consider the issue at this juncture. The Masings' testimony shows that the calculations were otherwise gleaned from the day to day running of Plaintiff's business, from which they will be able to testify under Fed. R. Evid. 701 as to projected profits and/or resulting damages.

Defendants argue that Hans Masing did not prepare all of the financial information himself. Hans Masing testified at his deposition that he and Ms. Masing together created at least one of the charts (referred to as Exhibit 1) by which they calculated their lost profit. The fact that he may have relied on reports created by others does not alone disqualify him from otherwise testifying pursuant

4

to Rule 701. *Lightning Lube, Inc.*, 802 F.Supp. at 1193 ("As the district court correctly noted, '[i]t is logical that in preparing a damages report the author may incorporate documents that were prepared by others, while still possessing the requisite personal knowledge or foundation to render his lay opinion admissible under Fed.R.Evid. 701.'")

At the hearing, Defendants also relied on the Third Circuit case of *Donlin v. Philips Lighting N.Am. Corp.*, for the proposition that an employee is not capable of extrapolating future damages. *See Donlin v. Philips Lighting N.Am. Corp.*, 564 F.3d 207, 215 (3d Cir. 2009). *Donlin* is distinguishable. It is an employment case and the *Donlin* court specifically noted that the plaintiff was a "temporary employee of Philips for a term of less than one year and did not develop in-depth knowledge of the company's salary structure, advancement opportunities, pay raises, or employment patterns. Therefore, her testimony cannot be considered within her personal knowledge and she does not qualify for the personalized knowledge exception." *Id*. at 215.

Defendants also argue that the Masings' calculation of damages is not consistent with the Michigan Uniform Commercial Code (U.C.C.). At the hearing, Defendants' counsel argued that the Masings' testimony does not meet the requirements of the Michigan Uniform Commercial Code, M.C.L. § 440.2713[3]. Defendants made only a cursory reference to this section of the Michigan U.C.C. and although their expert makes statements about it in his expert report, the issue has not

---

[3] M.C.L. § 440.2713 provides:
(1) Subject to the provisions of this article with respect to proof of market price (section 2723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this article (section 2715), but less expenses saved in consequence of the seller's breach.
(2) Market price is to be determined as of the place for tender or, in cases of rejection after arrival or revocation of acceptance, as of the place of arrival.

5

otherwise been briefed. The Court has considered M.C.L. § 440.2713 and cannot conclude at this time that it provides a basis for excluding the Masings' testimony. Under Michigan law, "where injury to some degree is found, [the court does] not preclude recovery for lack of precise proof." *See Godwin v. Ace Iron & Metal Co.*, 137 N.W.2d. 151, 156 (Mich. 1965); *see also Uganski v. Little Giant Crane & Shovel, Inc.*, 192 N.W.2d 580, 590 (Mich. App. 1971) (Michigan U.C.C. case citing *Godwin* regarding uncertainty as to amount of damages).

The Court finds that Defendants' Motion to Strike is premature at this time. The Court notes that much of the substance of Defendants' argument effectively asks the Court to determine the weight of Plaintiff's evidence, which is not properly the subject of this motion. Based on the testimony at the depositions, the Masings have personal knowledge of the areas about which they testified and the knowledge results from their day to day operation of the Plaintiff business. While there may remain some question as to the basis for their testimony regarding the price range of sales by other vendors of Webkinz and the use of the multipliers, it is not clear that this cannot be developed at trial and challenges made by one or more motions in limine. The Court will deny Defendants' Motion To Strike without prejudice.

## II.     Plaintiff's Motion To Strike Certain Of Defendants' Witnesses And Exhibits (Docket No. 113)

Plaintiff brings this motion asking the Court to strike Defendants' lay witness Nancy Lincoln, strike Defendants' expert witness Brett Horton and strike expert Horton's Report. These witnesses were added in Defendants' Supplemental Witness List filed on July 8, 2009. (Docket no. 109). The parties agree that June 30, 2008 was the deadline for filing of witness lists including both lay and expert witnesses and the parties filed lists on that date. (Docket no. 11, 12, 118). Although the discovery deadlines and other deadlines were amended thereafter, the witness list deadline was not.

Discovery closed on March 23, 2009. (Docket no. 69). Defendants did not move to supplement the witness list or extend the scheduling order. Defendants' supplemental list contains four lay witnesses and one expert with expert report. Plaintiff does not object to three of the four lay witnesses because they were already deposed.

### A. Defendants' Disclosure of Expert Witness Horton and His Written Report Was Untimely

Defendants argue that their disclosures were timely. First, Defendants argue that the Court's Order and standing order do not set a deadline for submission of expert reports. The fact that a date for expert reports was not set forth in the scheduling order does not negate the requirement to disclose the expert witnesses as ordered. Fed. R. Civ. P. 26(a)(2)(B) provides that "[u]nless otherwise stipulated or ordered by the court, this disclosure [of expert testimony] must be accompanied by a written report." Fed. R. Civ. P. 26(a)(2)(B). Defendants next argue that their disclosures were timely under Rule 26(a)(2)(C)(i). Rule 26(a)(2)(C)(i) provides for disclosure of expert testimony within 90 days before the trial date, yet it applies only "[a]bsent a stipulation or a court order." Here, the Court's order and the June 30, 2008 deadline apply.

Defendants argue that this was a timely supplementation under Rule 26(e). Rule 26(e) provides that a party who has made disclosures pursuant Rule 26(a) must "must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Subpart (2) provides that for "an expert whose report must be disclosed under Rule 26(a)(2)(B)," the party has a duty to supplement the information included in the report or given during the expert's deposition. Fed. R. Civ. P. 26(e)(2). The duty

to "supplement" and correct "incomplete" and "incorrect" information does not serve as a loophole to otherwise avoid meeting a court ordered deadline for disclosing expert witnesses.

Defendants also argue that Horton is a necessary rebuttal witness under Rule 26(a)(2)(C)(ii) to rebut Plaintiff's principals's testimony regarding damages. Rule 26(a)(2)(C)(ii) requires that evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)" must be disclosed within 30 days after the other party's disclosure. Fed. R. Civ. P. 26(a)(2)(C)(ii). The evidence which Expert Horton intends to rebut was not "identified by another party under Rule 26(a)(2)( B)." As set forth above, the Masings are not testifying as experts and have submitted no written report. Furthermore, Defendants' naming of a rebuttal witness is untimely. Even if the Court gives Defendants the benefit of the doubt by assuming the latest and final of the Masings' deposition dates was in January 2009 and that was the latest date when Plaintiff provided the evidence which Defendants intend to rebut, Defendants' July 8, 2009 disclosure of a "rebuttal" witness occurred more than thirty days later and was untimely.

**B.      Defendants' Disclosure of Witness Lincoln Was Untimely**

Defendants argue that Lincoln was "not kept a secret from Plaintiff," Plaintiff knew about Lincoln because she "attended a number of depositions" and she was identified in Defendants' responses to discovery requests as a person who assisted in answering or collecting information for the responses. Defendants also claim that "[u]nder the circumstances, Defendants were not technically required to amend the witness list to include Ms. Lincoln. Fed. R. Civ. P. 26(e) does not require supplementation of disclosures when the information was made known to the other party during the discovery process." (Docket no. 118, at 6). Defendants state that they "included Ms. Lincoln on their supplemental witness list as a courtesy to Plaintiff." *Id.* Defendants included with

8

their brief "Defendants' Responses to Plaintiff's First Set of Interrogatories and Requests to Produce." (Docket no. 119, Exhibit A, filed under seal with Defendant's Response and marked "Confidential- Subject to Protective Order").  Although Lincoln is listed in some of Defendants' Responses to Plaintiff's First Set of Interrogatories and Requests To Produce, she is often listed with other employees and there is no statement that Defendants may call her as a witness.  (Docket no. 119).

Defendants' argument suggests that by mentioning a name in a discovery response, a party is no longer obligated to include it on a witness list.  Such a practice would effectively render the Court's scheduling order regarding the identification of witnesses superfluous and is contrary to the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 16, 26(a).  The Court finds that Defendants' addition of lay witness Lincoln was untimely.

**C.      Whether Defendants Should Be Allowed to Untimely Add Witnesses**

Because Defendants' addition of Expert Witness Horton and Lay Witness Lincoln was untimely, the Court must determine whether Defendants should be allowed to supplement their witness list at this late date.  With respect to Defendants' argument that both parties in their witness lists reserved the right to supplement their lists, the Court does not find that boiler plate reservations of rights that conflict with the Court's scheduling order allow for the tardy identification of witnesses.

Defendants filed the Supplemental Witness List after the deadline and without moving to amend the list or the scheduling order.  Rule 16 provides that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Good cause is met by determining the moving parties' diligence in attempting to meet the scheduling order and whether

9

the opposing party will suffer prejudice by amending the scheduling order. *See Leary v. Daescher*, 349 F.3d 888, 906 (6th Cir. 2003). A party who "fails to provide information or identify a witness as required by Rule 26(a) or (e)" is "not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Defendants pointed out that the submission of the witness list in 2008 predated the submission of written discovery by either party. Defendants, however, have shown no good cause for adding Lincoln at this late date, well after the close of discovery and have not shown how Lincoln's evidence is important. Defendants themselves point out that Lincoln was known to the parties throughout discovery, however, they give no explanation for their failure to timely list her[4]. Defendants have not shown that they exercised diligence in seeking to extend the scheduling order or amend the witness list with respect to lay witness Lincoln or that their failure was substantially justified.

Plaintiff argues that it is prejudiced by the late disclosure of witness Lincoln. As Plaintiff points out, adding these witnesses now causes added expense and would delay the filing of the joint final pretrial statements, the pretrial order, and likely delay the trial. (Docket no. 95). The Court agrees. Defendants attempted to add Lincoln more than three months after the parties' stipulated close of discovery on March 23, 2009. (Docket no. 69). Defendants cannot now argue that Plaintiff is not prejudiced because Plaintiff could have deposed Lincoln when she was referenced in discovery responses. Such a conclusion would impose the obligation on a party to depose each and

---

[4]Defendants added lay witness Owen Rogers, who also appears in Defendants' responses to Plaintiff's discovery, on the original and timely witness list.

every individual identified in discovery, guessing as to whether or not each would actually be called as a witness. For these reasons, Plaintiff's motion to strike will be granted with respect to lay witness Lincoln.

With respect to expert Horton, "[t]he Sixth Circuit and other courts have held that district courts have broad discretion to exclude untimely disclosed expert-witness testimony." *See Estes v. King's Daughters Medical Center*, 59 Fed. Appx. 749, 753 (6th Cir. Mar. 6, 2003) (unpublished). A party must disclose expert testimony at the times and in the sequence that the Court orders. Fed. R. Civ. P. 26(a)(2)(C). The parties agree that the Court ordered witness lists to be filed, including experts, no later than June 30, 2008. It is undisputed that Defendants did not disclose Horton at any time prior to July 8, 2009.

Defendants argue that "[g]iven that Plaintiff has the burden of proof on damages, Defendants waited to see if Plaintiff would designate an expert to testify about these issues. Plaintiff never did. And until the Plaintiff filed its Opposition in response to Defendants' Motion to Exclude Certain Testimony (which incorporated Defendants' expert report) it was still unclear as to whether Plaintiff would attempt to have the Plaintiff's principals qualify as experts." Defendants note that "Plaintiff stated for the first time in its Opposition to Defendants' Motion to Exclude that it does not intend to qualify the Plaintiff's principals as experts regarding damages." (Docket no. 118 at n. 2). This argument is not persuasive. Plaintiff did not list an expert witness on its timely filed witness list nor have they otherwise indicated any intention to use an expert. Defendants have not shown any new evidence which would require expert testimony and which was unknown to them prior to their late designation of expert Horton. The latest information to which the Masings testified regarding damages has been known to the Defendants since January 2009. Plaintiff argues that it is prejudiced

11

because the time for discovery has passed, Defendants' late disclosure of an expert witness would require them to hire an expert without enough time left prior to trial to find, hire and prepare the witness for testimony, and they have already developed a strategy which relies on the Masings' testimony about damages based on their personal knowledge. (Docket no. 120 at ¶¶ 2, 3, 5, 7).

This is a situation of Defendants' own creation. They could have moved to name a witness when they knew of Plaintiff's damages theories as early as January 2009 and prior to the close of discovery. The prejudice to Plaintiff is great in this instance where the expert was named more than three months after the close of discovery and only a few months prior to the October 6, 2009 trial date. A continuance at this date would further delay trial to accommodate depositions and any necessary rebuttal witness to be retained by Plaintiff. The Court will grant Plaintiff's Motion to Strike as to expert Horton and his expert report.

**IT IS THEREFORE ORDERED** that Defendants' Motion To Exclude Certain Testimony Of Hans Masing and Patricia Masing (docket no. 111) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion To Strike Certain Of Defendants' Witnesses And Exhibits (docket no. 113) is **GRANTED**.

### NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: September _24_, 2009          s/Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE

2:07-cv-14294-GCS-MKM   Doc # 123   Filed 09/24/09   Pg 13 of 13   Pg ID 3735

**PROOF OF SERVICE**

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: September  24 , 2009	D. Goodine
	Courtroom Deputy

13